UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                            :
JESSE KAPLAN,                                               :
                                                            :
                                        Plaintiff,          :            11 Civ. 2125 (PAE)
                                                            :
                    -v-                                     :            OPINION & ORDER
                                                            :
HOME DEPOT USA, INC.,                                       :
                                                            :
                                        Defendant.          :
                                                            :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        In February 2009, plaintiff Jesse Kaplan ("Kaplan") allegedly purchased a water pump

from a store operated by defendant Home Depot, USA Inc. ("Home Depot").  Kaplan claims

that, at the store, he asked a Home Depot employee to direct him to a pump which could pump

gasoline, whereupon Kaplan purchased a pump (the "Pump") and brought it home.  On or about

April 17, 2009, Kaplan used the Pump to remove gasoline from a jet ski, at which time the Pump

ignited, severely burning him.  Kaplan then filed this lawsuit.  Discovery has now concluded,

and Home Depot moves for summary judgment.  For the following reasons, Home Depot's

motion is granted in part and denied in part.

I.      **Background and Undisputed Facts**[1]

        A.      **Kaplan's Alleged Purchase of the Pump**

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' respective
Local Rule 56.1 Statements ("Pl.'s 56.1" and "Def.'s 56.1"), as well as, where uncontested,
various exhibits to the parties' submissions on the instant motion.  These submissions include the
Affidavit of Timothy J. McHugh, Esq., in Support of Home Depot's Motion for Summary
Judgment ("McHugh Aff."); the Affidavit of Kim Neighbors in Support of Home Depot's
Motion for Summary Judgment ("Neighbors Aff.") and the Declaration of Michael H. Joseph,
Esq. in Opposition to Home Depot's Motion for Summary Judgment ("Joseph Decl.").

As noted, Kaplan alleges that he purchased the Pump at a Home Depot store located in Brewster, New York.  Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.  Although Kaplan is not certain of the exact date he purchased the Pump, he attests that the purchase was made sometime in February 2009.  Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.  Kaplan does not have a receipt for the purchase of the Pump, and paid for the pump in cash.  Def.'s 56.1 ¶¶ 8–9; Pl.'s 56.1 ¶¶ 8–9.[2]  Kaplan claims that a Home Depot employee assisted him with the purchase of the Pump, but he does not know the employee's name.  Def.'s 56.1 ¶¶ 11–12; Pl.'s 56.1 ¶¶ 11–12.

**B.      The Pump and its Warnings**

As noted, Kaplan alleges that he purchased the Pump at a Home Depot store on or about February 17, 2009, and that, on or about April 17, 2009, the Pump ignited and injured him.  The Pump at issue is a Flotec Utility Pump FP0F360AC.  Def.'s 56.1 ¶ 1; Pl.'s 56.1 ¶ 1.  The Pump was designed for the emergency dewatering of waterbeds, clogged sinks, aquariums, and boat bottoms.  Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.  The user manual that came with the Pump provides safety information and warnings.  It states:

> **SAFETY INFORMATION – WARNING HAZARDOUS VOLTAGE**
> **Use this pump only on a 115 volt circuit.  Pump is equipped with an approved 3-conductor cord and a 3-prong grounding-type plug.  To reduce the risk of electric shock, connect it to a properly grounded, grounding-type receptacle.**  If circuit has a 2-prong receptacle, replace it with a properly grounded 3-prong receptacle installed in accordance with the National Electrical Code and local codes and ordinances.  Any extension cord used must be outdoor grade, gauge 16 AWG or heavier, and not more than 25' long.
>
> **WARNING:  Risk of fire or explosion if used to pump flammable liquids or if used in explosive atmospheres.**  Pump water only with this pump.  Pump is designed to pump water at temperatures between 32° - 77° F (0° - 25° C) only.
>
> **WARNING:  Risk of electrical shock.  Do not allow the motor to get wet!**

---

[2] There is some dispute as to how the term "cash" is properly understood.  That topic is addressed *infra*.

> **CAUTION:   Risk of burns.**   During normal operation, motor case may heat enough to burn you.  Do not touch motor when it is hot.  Do not operate the pump continuously at a discharge pressure of more than 12 psi (83kPa) or discharge lift of more than 28' (8.5M), as the motor will exceed normal safe operating temperature and may heat to 180º - 190º F (82º - 88º C).
> **NOTICE:** This unit is not designed for applications involving salt water or brine! Use with salt water or brine will void warranty.

Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3 (boldface in original).  The Pump also had an electrical cord.

Attached to that cord was an orange tag, which contained the following warning:

> **WARNING**
>
> **Risk of fire or explosion.**  Do not use in explosive atmospheres.  Pump water only with this pump.

Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4 (boldface in original).  Additionally, on the body of the Pump itself, there is an orange warning sticker with black lettering, which provides:

> **NOTICE:  Add 1 teaspoon of oil to pump inlet before each start-up.  Do not run pump dry.  Do not pump flammable liquids.  Pump only water with this pump.**

Def.'s 56.1 ¶ 5; Pl.'s 56.1 ¶ 5 (boldface in original).

## C.     The Accident

Immediately before using the Pump on April 17, 2009, Kaplan reviewed the owner's manual to learn about the Pump.  Def.'s 56.1 ¶ 14; Pl.'s 56.1 ¶ 14.  Kaplan did not, however, read the warnings on the orange sticker attached to the Pump's power cord, Def.'s 56.1 ¶ 15; Pl.'s 56.1 ¶ 15, nor does Kaplan recall whether he saw the warning sticker on the side of the Pump itself.  Def.'s 56.1 ¶ 16; Pl.'s 56.1 ¶ 16.  Kaplan does, however, admit that a warning on a product is something that a user is expected to read, Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 17, and that he has previously read warnings on other products.  Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.  At deposition, Kaplan conceded that he knows the definition of "flammable," Def.'s 56.1 ¶ 22; Pl.'s 56.1 ¶ 22,

[3]

and that a warning to pump only water is inconsistent with his intended use of pumping gasoline. Def.'s 56.1 ¶ 23; Pl.'s 56.1 ¶ 23.

On April 17, 2009, Kaplan used the Pump to pump gasoline out of a jet ski.  Pl.'s 56.1 ¶ 36; Def.'s Reply 56.1 ¶ 36.  Within one minute of starting pumping, the Pump exploded, and Kaplan caught fire.  Pl.'s 56.1 ¶ 41; Def.'s Reply 56.1 ¶ 41.  Kaplan was on fire for one to two minutes before he was able to extinguish the flames.  Pl.'s 56.1 ¶ 42; Def.'s Reply 56.1 ¶ 42. Kaplan was then taken to Westchester Medical Center and treated in the burn unit for 10 days, and thereafter was treated at home by a visiting nurse.  Pl.'s 56.1 ¶ 42; Def.'s Reply 56.1 ¶ 42.

### D.    Procedural History

On February 14, 2011, Kaplan filed a Verified Complaint in New York State Supreme Court, New York County.  *See* Dkt. 1 ¶ 1.  On March 28, 2011, defendants Home Depot and Sta-Rite Industries, LLC, the manufacturer of the Pump, filed a notice of removal to this Court, whereupon the case was assigned to the Hon. Thomas P. Griesa.  *Id.*  On October 6, 2011, the case was reassigned to this Court.  Dkt. 10.  On May 14, 2012, Kaplan filed a second amended complaint, dropping defendant Sta-Rite, leaving Home Depot as the sole defendant.  Dkt. 21.

Kaplan's second amended complaint is not a model of clarity, as the claims asserted are neither specified or enumerated.  Instead, defendants—and the Court—are left to glean Kaplan's causes of action from the text of his allegations.  From that text, it appears that Kaplan asserts the following four causes of action against Home Depot: (1) general negligence by Home Depot in recommending that the Pump be used to pump gasoline; (2) breach of express warranty; (3) breach of implied warranty; and (4) negligent hiring and supervision of the employee who allegedly recommended the Pump for use with gasoline.  *See* Dkt. 21 ¶¶ 15, 17.

[4]

On May 30, 2012, Home Depot filed the instant motion for summary judgment.  Dkt. 27–31.  On June 4, 2012, Kaplan submitted his opposition brief.  Dkt. 36.  On June 15, 2012, Home Depot filed its reply.  Dkt. 37–38.

## II.      The Parties' Arguments

In support of its motion, Home Depot argues that: (1) Kaplan's warranty claims must fail because he did not use reasonable care in operating the Pump in disregard of numerous warnings; (2) Home Depot has no duty to Kaplan, because there is no evidence, aside from Kaplan's own self-serving statements, that Kaplan, in fact, purchased the Pump at Home Depot; and (3) Kaplan's negligent hiring and supervision claim must fail, because Kaplan has not even identified the Home Depot employee at issue, let alone adduced any evidence of that employee's allegedly deficient hiring or supervision.

In opposition, Kaplan argues that: (1) his alleged failure to heed warning labels is not a bar to Home Depot's liability, but rather an issue of comparative negligence which must be presented to a jury, and therefore Home Depot's argument premised on Kaplan's admitted failure to heed warnings is unavailing; (2) he has made out a prima facie case of breach of warranty; and (3) a jury could reasonably find that an employee who recommended a water-only pump for pumping gasoline was improperly trained and was not sufficiently supervised.[3]

## III.      Summary Judgment Standard

Summary judgment may be granted only where the submissions, taken together, "show [] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the

---

[3] Kaplan also argues that the Neighbors Affidavit should not be considered on this motion, because Neighbors was not identified in Home Depot's Fed. R. Civ. P. 26 disclosures.  That dispute is addressed at Section IV.E, *infra*.

absence of a material factual question; in making this determination, the court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.    Discussion

The Court addresses Home Depot's motion as to each of Kaplan's claims in turn.

### A.      General Negligence in Recommending the Pump

To prove negligence, a plaintiff must show (1) the existence of a duty owed to the plaintiff by the defendant (*i.e.*, a standard of reasonable conduct in relation to the risk of reasonably foreseeable harm); (2) the breach of that duty; and (3) that the breach was a substantial cause of the plaintiff's resulting injury. *See Baptiste v. New York City Tr. Auth.*, 28 A.D.3d 385, 386 (1st Dep't 2006) (citing, *inter alia*, *Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339 (1928)); *see also Bailey v. Disney Worldwide Shared Servs.*, No. 113072/08, 2012 N.Y. Misc. LEXIS 1291, at *16 (Sup. Ct. N.Y. Cty. Feb. 10, 2012); *Robinson v. Drury Enters., Inc.*, No. 108254/09, 2010 N.Y. Misc. LEXIS 5819, at *2–3 (Sup. Ct. N.Y. Cty. Nov. 24, 2010). A duty may exist where, for example, a defendant in privity with a plaintiff provides instructions on which the plaintiff reasonably relied, causing plaintiff injury, *see Caldwell v. Two Columbus Ave. Condo.*, 92 A.D.3d 441, 442 (1st Dep't 2012), or where a defendant possesses unique

[6]

expertise on which a plaintiff justifiably relied, *see High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 959–60 (2d Dep't 2012). "The existence and scope" of a duty to warn a consumer about a potentially dangerous product is an inquiry which is "generally fact specific." *Leary v. Syracuse Model Neighborhood Corp.*, 799 N.Y.S.2d 867, 874 (Sup. Ct. Onondaga Cty. 2005). Once a duty is established, the question whether that duty was breached is generally a matter for the fact-finder to resolve.

Home Depot forcefully argues that it had no duty to Kaplan because, as a factual matter, he did not purchase the Pump at Home Depot. In support of this argument, Home Depot observes that Kaplan has stipulated that he purchased the Pump in cash, and that a review of Home Depot's records, the results of which are transmitted through the Neighbors Affidavit, shows that it did not sell that model pump in a cash transaction during February 2009. Although, for the reasons discussed *infra*, Kaplan's 11th-hour and shifting claims of a cash transaction leaves the Court (and may well leave a jury) skeptical that he did, in fact, purchase the Pump at Home Depot, he has offered sworn testimony that he did so, and the Court cannot engage in credibility determinations on a motion for summary judgment. Home Depot does not challenge Kaplan's negligence claim on any other ground. Accordingly, Home Depot's motion as to Kaplan's negligence claim is denied.

### B.    Kaplan's Warranty Claims

In the context of the sale of goods—like the Pump here—the creation of express warranties is governed by N.Y. U.C.C. § 2-313. Section 2-313 provides, in pertinent part:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

[7]

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.Y. U.C.C. § 2-313.  Under that provision, "[i]n order to demonstrate that an express warranty was created under New York law, a plaintiff 'must prove that the statement falls within the definition of a warranty, that [he or] she relied on it, and that it became part of the basis for the bargain.'"  *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (quoting *Daley v. McNeil Consumer Prods., Co.*, 164 F. Supp. 2d 367, 377 (S.D.N.Y. 2001)); *see also Friedman v. Medtronic, Inc.*, 345 N.Y.S.2d 637, 643 (2d Dep't 1973) (requiring "an affirmation of fact or promise by the seller, the natural tendency of which is to induce the buyer to purchase" in order for an express warranty to exist).

Similarly, the creation of implied warranties—also known as warranties of fitness for a particular purpose—is governed by N.Y. U.C.C. § 2-315, which provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Here, Kaplan has testified at deposition that: (1) he spoke to a Home Depot employee and requested that he be directed to a pump which could pump gasoline; (2) the employee directed him to the Pump; (3) the employee advised him that the Pump was suitable for pumping gasoline; and (4) he purchased the Pump in reliance on that advice.  This suffices to raise a triable issue of fact as to whether the employee's actions created an express or implied warranty between Home Depot and Kaplan.

Home Depot does not argue that any exclusion or modification vitiates any warranty which its employee's oral advice would have created.  Nor can Home Depot avoid liability, as a matter of law, on the basis of Kaplan's failure to read warning labels on the Pump after he

[8]

purchased it.  The primary case cited by Home Depot is *Codling v. Paglia*, 32 N.Y.2d 330

(1973).  There, the Court of Appeals held that a plaintiff could recover for injury caused by a

product only where, *inter alia*, "he would not, by the exercise of reasonable care, have both

discovered the defect and perceived its danger."  *Id.* at 342.  On this basis, Home Depot argues,

Kaplan's failure to heed warning labels precludes its liability.

> *Codling*, however, does not assist Home Depot.  In 1975—two years after *Codling*—New
York tort law transitioned from a contributory negligence framework—under which negligence
by plaintiff negated any recovery—to a comparative negligence framework, whereby, in general,
a plaintiff's recovery may be reduced by his or her degree of responsibility for an accident, but a
defendant's liability is not *per se* extinguished by a plaintiff's partial responsibility.  *See* N.Y.
C.P.L.R. § 1411 (effective Sept. 1, 1975).  Under § 1411, "culpability on the part of a plaintiff in
mishandling the product or in failing to exercise reasonable care to discover the defect, etc., will
not bar recovery unless that conduct is found to be the sole cause of plaintiff's injury."  *Sheppard
v. Charles A. Smith Well Drilling & Water Sys.*, 93 A.D.2d 474, 478 (3d Dep't 1983) (citing *Voss
v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 110 (1983)); *see also Soto v. N.Y. City Trans. Auth.*,
6 N.Y.3d 487, 492 (2006) ("plaintiff's conduct, although a substantial factor in causing the
accident, was not so egregious or unforeseeable that it must be deemed a superseding cause of
the accident absolving defendant of liability") (citing § 1411).  Although Home Depot presents a
strong case that Kaplan bears substantial responsibility for the accident, a reasonable jury could
conclude that Kaplan's negligence was not the *sole* cause of the accident, *i.e.*, that Home Depot's
conduct contributed to it.  Accordingly, Home Depot's motion as to this claim is denied as well.

> **C.    Kaplan's Negligence Claims Relating to the Hiring and Training of the
> Employee**

Kaplan also claims that Home Depot was negligent in hiring and/or supervising the

employee who allegedly misdirected him to the Pump.  "To establish a cause of action based on

negligent hiring and supervision, it must be shown that 'the employer knew or should have

known of the employee's propensity for the conduct which caused the injury.'"  *Jackson v. N.Y.*

*Univ. Downtown Hosp.*, 69 A.D.3d 801, 801 (2d Dep't 2010) (quoting *Kenneth R. v. Roman*

*Catholic Diocese*, 229 A.D.2d 159, 161 (2d Dep't 1997)); *see also Coffey v. City of N.Y.*, 40

A.D.3d 449, 450 (1st Dep't 2008); *Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33 A.D.3d 875,

878 (2d Dep't 2006).  The record at summary judgment is devoid of any evidence tending to

show that Home Depot "knew or should have known" of the employee's alleged propensity to

misdirect customers to purchase products with a plan to put them to inappropriate uses.  Indeed,

Kaplan has not even identified the employee at issue.  Home Depot's motion as to this claim is,

therefore, granted.

### D.   Reopening Discovery

The Court is constrained to note with disappointment the conduct of Kaplan's counsel,

who, in relation to this motion and the events immediately preceding it, has been disingenuous

with his adversaries and the Court.

At the parties' May 10, 2012 conference with the Court, Home Depot brought to the

Court's attention the fact that Kaplan had not yet specified how he had purchased the Pump at

issue.  *See* Dkt. 34 at 8–10.  The Court directed Kaplan's counsel to review his client's debit and

credit card records to resolve whether the Pump had been purchased with cash, or by a debit or

credit card.  *See id.* at 11–13.  On May 11, 2012—one day after the conference—Kaplan's

counsel reported to Home Depot's counsel, by letter, that after having reviewed his client's

records, "we stipulate that the purchase was made in cash."  McHugh Aff. Ex. U.

On May 30, 2012, when Home Depot filed its motion for summary judgment, it included the affidavit of Kim Neighbors, an employee of Home Depot.  Dkt. 30.  That affidavit attests that based on the company's business records, the Pump could not have been purchased at Home Depot's Brewster, New York store during February 2009, because during that month that store did not have any cash sales of the relevant pump model.  *See* Neighbors Aff. ¶ 7.

On June 4, 2012, Kaplan filed an opposition to Home Depot's motion.  Dkt. 36.  That submission included a Local Rule 56.1 statement opposing Home Depot's version of the undisputed facts.  Dkt. 36-2.  Paragraph 10 of that document disputes Home Depot's statement that the Pump was purchased in a cash transaction, stating instead that it was purchased by debit card, "which is a cash transaction."  *Id.* ¶ 10.

Kaplan's abrupt change of course is disingenuous.  In the context of the May 10, 2012 conference, the description of a purchase as a "cash" transaction clearly connoted a transaction for which there would be no electronic record.  The stipulation of Kaplan's counsel in the May 11, 2012 letter—that the "purchase was made in cash"—clearly conveyed to opposing counsel that the transaction in question, if it occurred at all, would not appear in Kaplan's bank records, and therefore that a subpoena directed at those records "would not be reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Through this change of story, Kaplan now seeks to skirt the unchallenged Neighbors Affidavit by contradicting his prior implicit representation that the transaction was made in cash. It is especially troubling that he has done so after discovery closed, and after his representation that the purchase was made in cash (and not in a format, such as by a debit card, that would have left a paper trail) reasonably led Home Depot not to subpoena Kaplan's debit card records.

This game of three-card monte is now over.  The Court will reopen discovery, *sua sponte*, for the sole purpose of allowing Home Depot to subpoena records relating to any or all of Kaplan's financial accounts, for the period from January 15, 2009 to March 15, 2009, so that Home Depot may have an opportunity to probe the veracity of Kaplan's 11th-hour statement that he purchased the Pump in a debit card transaction.[4]

### E.     Home Depot's Rule 26 Obligations and the Neighbors Affidavit

Finally, in his opposition to this motion, Kaplan challenges the admissibility of the Neighbors Affidavit under Fed. R. Civ. P. 37(c), arguing that Neighbors and the business record evidence she transmitted through her affidavit were not identified in Home Depot's Fed. R. Civ. P. 26 disclosures.  Although the Court has not relied on the Neighbors Affidavit for the purposes of resolving this motion—on the contrary, it has permitted Kaplan's claims to go forward, save those based on negligent hiring and training—the Court addresses that dispute now.

On November 10, 2011, Home Depot served on Kaplan a request for the production of documents, requesting, *inter alia*, documents reflecting the method by which Kaplan paid for the Pump.  *See* McHugh Aff. Ex. K.  Kaplan replied that he was "not presently in possession of any such documents."  *Id.*

On April 3, 2012, Kaplan was deposed.  He testified that he could not remember the date of purchase, and could not confirm the precise manner of payment.  *See id.* Ex. V at pp. 27–30.

On or about April 24, 2012—after Kaplan's deposition, and because Kaplan could not identify the manner by which he paid for the Pump—Home Depot issued another request for

---

[4] At the May 10 conference, Kaplan's counsel expressed concern that Home Depot's request for information regarding Kaplan's credit and debit cards was a "fishing expedition" designed to gin up material for cross-examination. Dkt. 34 at 12.  This concern is unfounded (and, any in event, may be addressed by a motion *in limine* to preclude examination at trial as to information in Kaplan' credit and debit card records unrelated to the events at issue here).

production, seeking Kaplan's debit and/or credit card numbers for cards active in February 2009. *See id.* Ex. Y. Kaplan did not respond to that request by the parties' May 10, 2012 conference with the Court, at which point, as noted, the Court directed Kaplan's counsel to confirm the method of payment. On May 11, 2012, Kaplan's counsel stipulated that the Pump was purchased in cash. *Id.* Ex. U.

At that point, Home Depot, through its employee Neighbors, conducted a review of its records in an attempt to locate a cash-based transaction for a pump of the same model during February 2009. On May 25, 2012, that review having been completed, Home Depot served a supplemental Rule 26 disclosure stating that it intended, in this litigation, to offer the results of a search of its store receipts from the Brewster, New York store for February 2009. *See* McHugh Aff. Ex. Z. Neighbors is the record custodian and employee who conducted that search.

Fed. R. Civ. P. 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Kaplan argues that the Neighbors Affidavit—and the search of Home Depot's records reflected in it—should be excluded because Home Depot's reliance on it amounts to "motion practice by ambush" which "should not be permitted" by the Court. Pl.'s Opp. 14.

The Court rejects this argument. It finds that Home Depot's failure to previously identify the receipts is "substantially justified."

Kaplan, as the plaintiff, has the burden of demonstrating that Home Depot is liable for his injuries. The record reflects that Home Depot attempted through proper discovery channels, and for more than a year, to elicit from Kaplan the method of his alleged payment for the Pump, to no avail. Home Depot reasonably sought the Court's intervention in that process at the May 10,

2012, conference.[5] Only in response to the Court's order did Kaplan finally commit to a version of events, to wit, that he had paid in cash. Home Depot will not be penalized for reasonably following up on that disclosure by reviewing its records to see if they were consistent with it. And Home Depot, upon completing that review, promptly served supplemental disclosures on Kaplan's counsel. Under these circumstances, the fact that Home Depot had not previously identified Neighbors, and the material referenced in her affidavit, was "substantially justified."

## CONCLUSION

For the foregoing reasons, Home Depot's motion is granted as to Kaplan's negligent hiring and failure to train claims, but is denied in all other respects. Home Depot is afforded until one week from the date of this Opinion and Order to issue a subpoena or subpoenas for Kaplan's account records for the period from January 15, 2009 to March 15, 2009.

The parties are directed to be ready to begin trial on December 3, 2012. The parties are to submit a joint pretrial order in accordance with the Court's Individual Rules and Practices, including any motions *in limine*, no later than September 28, 2012. A final pretrial conference will be held on Monday, November 19, 2012 at 10:00am in Courtroom 18C of the United States Courthouse, 500 Pearl Street, New York, New York 10007.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: August 13, 2012
       New York, New York

---

[5] Notably, Kaplan did not respond to Home Depot's discovery request for his credit and debit card numbers in the more than two weeks between April 24, 2012 and the May 10, 2012 conference with the Court, but was able to retrieve not only the numbers, but the cards' transaction records, in less than 24 hours after having been directed to do so by the Court.